IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEBORAH ANN PACKER, )
 )
   Plaintiff, )
 )
v. ) Civil Action No. 11-0084-CG-N
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
   Defendant. )

# ORDER

Plaintiff Deborah Ann Packer ("Packer") applied for Disability Insurance Benefits and Supplemental Security Income on February 12, 2009. In rendering a decision on behalf of Defendant, the Commissioner of the Social Security Administration (the "Commissioner"), the Administrative Law Judge ("ALJ") denied Packer's application. Packer filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision. The matter was referred to the Magistrate Judge, who issued a report and recommendation, recommending that this Court reverse the decision to deny disability insurance benefits and remand the matter for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g). (Doc. 21) The matter is presently before the Court on Defendant's objections to the Report and Recommendation.[1] (Doc. 22) Upon a *de novo* review of those portions of the report and recommendation to which objection is made, this Court concludes that

---

[1] Though permitted under Local Rule 72.4(b), Packer did not file a response to Defendant's objection.

Defendant's objections are **SUSTAINED**, the Commissioner's decision to deny benefits is **AFFIRMED**, for the reasons set forth below.

## I.     BACKGROUND

The Report sets out in detail the facts and procedural history of this matter, to which neither side has objected.  The Court, finding no error, adopts the Report's recitation of the facts and procedural history.

## II.    LEGAL STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).  Substantial evidence is more than a scintilla but less than a preponderance, and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Crawford, 363 F.3d at 1158.  Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence.  Crawford, 363 F.3d at 1158-59.  The Court does not decide facts anew, make credibility judgments, reweigh the evidence, or substitute its judgment for that of the Commissioner. Moore, 405 F.3d at 1211; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Magistrate judges, district judges, and appellate judges must all apply the same deference to the Commissioner's decision.  Dyer, 395 F.3d at 1210; Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1282 (11th Cir. 2004); Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

A claimant bears the burden of showing he is disabled, see 20 C.F.R. § 404.1512(a), and the ALJ makes a five-step evaluation, applying the criteria of 20 C.F.R. § 404.1520, to determine whether the claimant has met that burden. Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

Id. (citations omitted). At the fourth and fifth steps, the ALJ makes a determination of the claimant's residual functional capacity ("RFC") by examining his ability to sit, stand, walk, lift, carry, push, pull, reach, stoop, crouch, handle, and perform other work-related physical demands. See 20 C.F.R. §§ 404.1520(e), (f), 404.1545(b).

### III. DISCUSSION

Packer argued on appeal that the ALJ's determination of her residual functional capacity ("RFC") was not supported by the medical opinion of any treating or examining medical source. (Doc. 16 at 5-15) The Magistrate Judge agreed:

> The ALJ has not, in fact, explained how she specifically arrived at her opinion that Packer could perform "light work" with the limitations

3

> imposed solely by the ALJ.  The record contains no medical opinion that even attempts to address Packer's residual functional capacity.  The Commissioner does not dispute that the only physical capacities assessment contained in this record was completed by a State Agency non-examining, non-physician, reviewing "Medical Consultant" on May 21, 2009.  Because the ALJ added a condition that Packer requires a sit/stand option, cannot operate foot controls, and must only occasionally be required to kneel or crawl, the ALJ's decision is also inconsistent with the assessment of that reviewing medical consultant who opined that Packer could frequently kneel and crawl and did not impose a sit/stand requirement.  Although it might be argued that the ALJ correctly assumed that Packer needed the more significant limitations, the ALJ's RFC is nonetheless unsupported by any evidence of record.

(Doc. 21 at 23) (internal citations and footnote omitted).  Defendant argues that this Court should decline to adopt the Magistrate Judge's Report and Recommendation for two reasons.  First, Defendant argues that case law cited by the Magistrate Judge that an ALJ's finding must be based on the RFC assessment of a treating or examining physician is contrary to the Commissioner's regulations and Eleventh Circuit authority.  Second, Defendant contends that "ample substantial evidence," including the opinions of Drs. Carver, Sherman, Formwalt, and Janovski as well as medical consultant Ericka Morris, supports the ALJ's RFC determination.[2]  The Court will address each argument in turn.

---

[2]   To the extent Defendant attempts to state further "objections" by merely incorporating by reference its brief in response to Plaintiff's Brief (Doc. 22 at 1), the Court deems these "objections" waived.  This Court requires an objecting party to "specify those portions of the recommendation to which objection is made and the basis for the objection." S.D. Ala. L.R. 72.4(a).  An objection that merely "restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." VanDiver v. Martin, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004).

### A. Whether an RFC assessment from a source other than a treating or examining physician can constitute substantial evidence

Packer contends that the ALJ's RFC determination is not supported by substantial evidence, inasmuch as the record does not contain a treating or examining medical source's opinion that substantiates the ALJ's RFC.  In support of her argument, the Magistrate Judge cites Coleman v. Barnhart, 264 F. Supp. 2d 1007 (S.D. Ala. 2003), in which this Court found reversible error where an ALJ's determination was not directly supported by a treating or examining physician's physical capacities evaluation ("PCE").  However, the fact that no treating or examining source submitted such a statement in this case does not, in and of itself, mean that there is no medical evidence, much less no "substantial evidence," to support the ALJ's decision.

Several courts have declined to adopt Plaintiff's Coleman argument, refusing to "read into every case a requirement that the ALJ obtain a residual functional capacity assessment from a treating or examining physician." Cooper v. Astrue, 2009 WL 537148, at *7 (M.D. Ga. Mar. 3, 2009).  Other district courts have disregarded Coleman as standing in conflict with the Commissioner's regulations, and decisions of other courts in the Eleventh Circuit.  20 C.F.R. § 404.1520(e) (stating that administrative law judges will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence"); see, e.g., Langley v. Astrue, 777 F. Supp. 2d 1250, 1258-59 (N.D. Ala. 2011); see also Daniels v. Astrue, 2012 WL 353756, at *5 (M.D. Ala. Feb. 2, 2012);

5

Lee v. Astrue, 2009 WL 1393503, at *5 (M.D. Fla. May 18, 2009). These courts have rightly observed that the ALJ is responsible for determining a claimant's RFC "based on all relevant evidence and not just medical evidence." Rivers v. Astrue, -- F. Supp. 2d. --, 2012 WL 4497624, at *8 (S.D. Ala. Sept. 28, 2012); see Phillips, 357 F.3d at 1238 ("[T]he ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case."); see also Foxx v. Astrue, 2009 WL 2899048, at *6 (S.D. Ala. Sept. 3, 2009) ("The RFC assessment must be based on all of the relevant evidence in the case such as: medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, and medical source statements." (citing SSR 96-8p, 1996 SSR LEXIS 5)).

Since Coleman, numerous courts have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician.[3] Though the opinion of a non-examining medical professional "is

---

[3] See, e.g., Fancher v. Astrue, 2012 WL 4737136, at *4 (S.D. Ala. Sept. 27, 2012) ("[T]he record in this case was sufficient to give substantial support to the ALJ's decision, even in the absence of a residual functional capacity finding by a treating or examining physician . . . ."); Oates v. Astrue, 2012 WL 4336011, at *7 (S.D. Ala. Sept. 21, 2012) (finding ALJ's RFC assessment to be supported by substantial evidence even though only RFC assessment in the record was prepared by a state agency disability examiner); Edwards v. Astrue, 2012 WL 4336013, at *6 (S.D. Ala. Sept. 21, 2012) ("[T]he absence of a physical assessment by a medical professional does not require reversal under the circumstances of this case." (citing Green v. Soc. Sec. Admin., 223 F. App'x 915, 923-24 (11th Cir. 2007))); Dailey v. Astrue, 2012 WL 3206482, at *9 (S.D. Ala. July 18, 2012) ("[A]n ALJ may reach an RFC determination in appropriate circumstances on a record that does not include an RFC opinion from a treating or examining medical source." (citing Griffin v. Astrue, 2008 WL 4417228, at * 10 (S.D. Ala. Sept. 23, 2008))); Harris v. Astrue, 2008 WL 4145965, at *5 (M.D. Fla. Sept. 7, 2008) ("[T]he law judge, as the factfinder, does not

6

entitled to little weight and *taken alone* does not constitute substantial evidence to support an administrative decision," Swindle v. Sullivan, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (emphasis added), an ALJ can consider such an assessment in conjunction with other relevant evidence to support its RFC determination. See Clark v. Astrue, 2012 WL 2958216, at *4 n.4 (S.D. Ala. July 19, 2012) (substantial evidence need not include a physician's RFC or PCE). But cf. Foxx, 2009 WL 2899048, at *7 ("While the findings of state agency medical consultants regarding the nature and severity of an individual's impairments must be considered and can be relied upon when they do not conflict with the opinions of examining sources . . . , [a] SDM[4] is not a medical professional of any stripe, and a finding from such an individual is entitled to no weight as a medical opinion, or to consideration as evidence from other non-medical sources.").

In arguing that an ALJ's RFC assessment cannot be supported with the RFC of a non-examining reviewing physician, Plaintiff fails to recognize that the ALJ is not precluded from making a proper RFC determination in "the absence of an opinion from an acceptable medical source." Meneses v. Astrue, 2011 WL 1595157, at *4 (S.D. Fla. Apr. 4, 2011). "Contrary to Plaintiff's argument, there is no rule of law [in Coleman] which requires that an ALJ's RFC determination be supported by an assessment from a physician." Daniels, 2012 WL 353765, at *4. Accordingly,

---

need an opinion from a treating or examining doctor concerning a claimant's functional limitation in order to make a finding regarding a claimant's residual functional capacity.").

[4] A SDM, or "single decisionmaker," is not one of the "acceptable medical sources" the Commissioner may consider when evaluating a disability claim. See 20 C.F.R. § 404.1513 (listing "acceptable medical sources").

without disregarding the assessment of any non-treating individual, this Court will review the Magistrate Judge's conclusion that the ALJ's RFC determination was not supported by substantial evidence.

### B. Whether substantial evidence supports the ALJ's RFC assessment

The ALJ set forth Packer's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b). The claimant can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours in an 8-hour work day and sit for 6 hours in an 8-hour work day, with a sit/stand option; no operation of foot controls, no climbing of ladders/ropes/scaffolds; no working on unprotected heights, dangerous equipment or in temperature extremes; no more than occasional climbing of stairs/ramps, bending, stooping, kneeling, crouching, crawling, and no complex or detailed instructions.

(Doc. 15-2 at 21-22) The Magistrate Judge concluded that the ALJ did not explain how it determined that Packer could perform less than the full range of light work. Specifically, the Magistrate Judge questioned the imposition of certain restrictions. (Doc. 21 at 23). The Magistrate Judge also premised her report and recommendation on perceived inconsistencies between the medical evidence found in the record and the medical evidence relied upon by the ALJ.

"[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work." Salter v. Astrue, 2012 WL 3817791, at *3 (S.D. Ala. Sept. 4, 2012). To enable meaningful review, Eleventh Circuit precedent requires ALJs to state with clarity the grounds for their decisions. Id. at *4. However, the

8

Eleventh Circuit has declined to impose overly "rigid requirements" when reviewing disability decisions.  Dyer, 395 F.3d at 1211.  An ALJ need not "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'"  Id. (quoting Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995)).

### 1.  The ALJ's RFC Determination

In the present case, the Magistrate Judge disagreed with the ALJ's imposition of additional restrictions to the RFC, including a sit/stand option, inability to operate foot controls, and only occasional kneeling/crawling.  (Doc. 21 at 23)  The Court will now examine in detail the ALJ's stated reasons for its RFC determination.

### a)  The Court Must Defer to the ALJ's Credibility Determination

The ALJ found Packer's testimony as to the severity of her functional limitations to be only "partially credible."  (Doc. 15-2 at 25-26)  An ALJ who does not credit a claimant's testimony "must articulate explicit and adequate reasons for doing so."  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  The ALJ satisfied this standard in discrediting Packer's testimony as to the extent of her disabling pain by noting that (1) Packer's previous testimony was substantially different; (2) Packer was "inconsistent and evasive, and failed to provide any significant clarification of prior inconsistencies" during her hearing; and (3) Packer's testimony

was not supported by objective medical evidence.[5]  (Doc. 15-2 at 22-23, 26)  For instance, the ALJ observed that Packer's allegations regarding her levels of pain were inconsistent with the relatively conservative and static level of medical treatment advocated by her physicians.  (Id. at 25)  Indeed, the evidence showed that, despite continued complaints, Packer never attempted to change her treatment plan.[6]  (Id.)  See Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (finding no error in ALJ's rejection of claimant's testimony about his pain because his "course of treatment for his spinal, heart and thyroid conditions during the period in issue were entirely conservative in nature").

It is well established that credibility determinations about subjective testimony are generally reserved to the ALJ and that the ALJ's credibility findings are to be given deference.  See Foote, 67 F.3d at 1562 ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."); Johns v. Bowen, 821 F.2d 551, 557 (11th Cir. 1987); Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984).  Therefore, the ALJ's partial rejection of Packer's testimony was not error.

---

[5] The ALJ credited Packer's testimony as to the extent of her daily activities. Specifically, the ALJ noted that Packer testified that she continued to interact with friends and family.  Packer also testified to being able to do her own laundry, cook breakfast and lunch, attend to his personal needs, go grocery shopping and attend church twice a month, and watch television, read, and work on a computer.  (Doc. 15-2 at 53-55)

[6] In contrast, the ALJ recognized that "[p]ersistent attempts by the claimant to obtain relief of a symptom may provide strong indications that the claimant's symptoms are the source of the distress to the claimant and generally lends support to the claimant's allegations." (Doc. 15-2 at 25)  The ALJ also noted that Packer repeatedly failed to show to treatment appointments, which was "inconsistent with the nature of symptoms and limitations alleged."  (Id.)

### b) The ALJ Properly Analyzed Packer's Social Functioning

In making its RFC determination, the ALJ concluded that Packer had "mild difficulties" in social functioning. (Doc. 15-2 at 20) The Magistrate Judge found that this conclusion was unsupported, whereas a State Agency reviewing physician, Dr. Donald E. Hinton, had concluded that Packer had "moderate" difficulties in maintaining social functioning and with interacting with the general public. (Doc. 21 at 24 n.18)

However, the ALJ expressly considered Dr. Hinton's opinion but concluded that it should not be given controlling weight as it was belied by Packer's testimony that she interacted frequently with friends and family. (Doc. 15-2 at 25) The ALJ also assessed that Packer's inability to interact socially was more a function of her physical condition rather than mental capacity and concluded that the full record demonstrates that Packer's capacity for social functioning is only "mildly impaired." (Id.) The record supports this conclusion, as Packer testified that she does not have problems getting along with people, was able to socialize with friends occasionally, and attended church every other week. (Doc. 15-2 at 20) Furthermore, because Dr. Hinton's evaluation occurred over a year prior to the ALJ's decision, it "was afforded lesser weight subject to the additional evidence not available at the time it was performed." See Lawton v. Comm'r of Soc. Sec., 431 F. App'x 830, 833 (11th Cir. 2011) ("The ALJ was permitted to discount Dr. Soundappan's opinion based on a finding that it was inconsistent with later medical evidence."). Whereas the ALJ articulated specific reasons for refusing to give Dr. Hinton's opinion controlling

11

weight, the Court finds no error in the either ALJ's treatment of Dr. Hinton's opinion or its evaluation of Packer's social functioning.  See Gilabert v. Comm'r of Soc. Sec., 396 F. App'x 652, 655 (11th Cir. 2010) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error."); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (if substantial evidence supports the ALJ's denial of benefits, the district court errs by reweighing the evidence).

### c) The ALJ Properly Analyzed Dr. Sherman's Report

The Magistrate Judge concluded that the ALJ's reliance on Dr. Sherman's report was problematic because Dr. Sherman (1) examined Packer more than a year before the ALJ's decision and (2) expressed no opinion on Packer's specific physical capabilities or limitations.  (Doc. 21 at 22)  As to the first point, the ALJ was entitled to consider Dr. Sherman's report.  See 20 C.F.R. 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").  In fact, the ALJ was within its authority to consider medical reports that preceded Packer's alleged onset date.  Beth v. Astrue, 494 F. Supp. 2d 979, 1006-07 (E.D. Wis. 2007) ("It is well-established that evidence from a prior application, even if not re-opened, can be relevant to a claim of disability with a later onset date.  Thus, ALJs should not ignore medical reports simply because they predate the alleged onset of disability.") (citations omitted).

Second, there is no indication that the ALJ placed undue reliance on Dr.

Sherman's report.  Rather, as explained in greater detail below, the ALJ drew upon several physical exams by different physicians, including Drs. Carver, Formwalt, and Janovski, and medical consultant Ericka Morris's PCE, which detailed Packer's physical capabilities and limits, and supported the conclusion that Packer had the RFC for a limited range of light work.

### d) The ALJ's Determination that Packer Could Perform Light Work with Certain Limitations Is Supported by Substantial Evidence

The Court finds that substantial evidence supports the ALJ's RFC determination.  The ALJ found that Packer suffered from depression and degenerative disc disease of the lumbar spine, but that these health problems were not disabling.  (Doc. 15-2 at 17, 28)  Rather, the ALJ determined that, though Packer could not perform any past relevant work, she retained the capacity to perform light work with certain limitations.  The ALJ arrived at this conclusion after careful review of Packer's medical records, Packer's testimony, and testimony from a vocational expert.  "Light work" is defined as work that "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Light work also involves lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds. Id.

Packer's ability to perform light work is supported by Packer's own hearing testimony that she can lift 20-30 pounds and has no problems with her hands.  (Doc. 15-2 at 22, 51).  Additionally, medical consultant Ericka Morris determined that

Packer can occasionally lift 20 pounds and frequently lift 10 pounds, and that she could stand and/or walk (with normal breaks) for 6 hours in an 8-hour day, and sit (with normal breaks) for 6 hours in an 8-hour day.[7]  (Id. at 63)  Additionally, in February 2009, Dr. Carver found that Packer had no muscular atrophy and normal reflexes.  (Doc. 15-7 at 33)  In May 2009, Dr. Sherman examined Packer and found that she had a full range of motion in her neck, back, and all extremities, and a normal gait, station, squat and heel-to-toe walk.  (Id. at 59)  In May, Dr. Formalt also observed that Packer did not have any gross or fine motor impairments.  (Id. at 36)

Similarly, the restrictions that the ALJ incorporated into the RFC are supported by substantial evidence.  The Magistrate Judge took issue with the ALJ's conclusion that Packer could not operate foot controls, required a sit/stand option, and could only occasionally kneel and crawl, considering that the medical consultant had concluded that Packer had unlimited ability to push and/or pull (including operation of hand and/or foot controls) and the ability to kneel and crawl frequently. (Doc. 15-2 at 21)  However, the ALJ noted "some degrees of exertional

---

[7] While the only physical capacities assessment was completed by a non-examining medical consultant, the ALJ articulated good cause for crediting that opinion and was entitled to rely on it because it was consistent with treating and examining physicians' underlying clinical findings and was consistent with the objective medical evidence in the record.  See Foxx v. Astrue, 2009 WL 2899048, at *6 (S.D. Ala. Sept. 3, 2009) ("The opinions of non-examining medical sources, 'when contrary to those of examining [sources], are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.  However, the ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources.'" (quoting Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987))).

14

and postural restrictions were afforded to accommodate the claimant's musculoskeletal issues as supported by medical evidence." (Doc. 15-2 at 23) Plaintiff's musculoskeletal problems are sufficiently documented. For instance, in February 2009, Dr. Carver diagnosed Packer with lumbar disc syndrome. (Doc. 15-7 at 33) In May 2009, Dr. Sherman noted that Packer had "some" stiffening over her rhomboid areas and in her muscles. (Doc. 15-7 at 58-60). Dr. Janovski saw Plaintiff on five separate occasions from January to May 2010, and noted that she was experiencing "complaints of pain," "tingling," "numbness" and, each time, wrote down a diagnosis of "lumbar disc syndrome." (Doc. 15-7 at 70, 73-74, 96, 98)

In addition, the ALJ also cited Packer's extensive use of medications and the attendant side effects as bases to conclude that Packer's physical capacity to perform light work is more substantially limited. (Id.) Because treatments for musculoskeletal disorders may have adverse side effects, the Social Security regulations require the Commissioner to consider medical treatment not only "in terms of its effectiveness in ameliorating the signs, symptoms, and laboratory abnormalities of the disorder" but also "in terms of any side effects that may further limit the individual." 20 C.F.R. Pt. 404. Subpt. P, App. 1. Packer's extensive list of 19 medications is in the record, see Doc. 15-6 at 58, and though Packer admitted that she did not take every medication every single day, she testified to taking several per day. (Doc. 15-2 at 44, 50) Packer testified during the hearing that the medications make her "groggy," "real relaxed to where I just have to just lie down," and "irritable." (Doc. 15-2 at 47-48) During the hearing, the effect of the

15

medications on Packer's mental and physical state was well documented; the ALJ noticed that Packer was "very, very hesitant about answering questions," and Packer's attorney represented that she needed to take a break due to the medications having "quite an effect . . . on her." (See Doc. 15-2 at 50)  In drafting her RFC, the ALJ expressly considered the impact the medications would have on Packer's ability to perform work,[8] and explicitly stated that the restrictions imposed were "meant to accommodate [Packer's] combination of impairments and medication side effects, . . . consistent . . . with the objective evidence of [Packer's] remaining capacity to function through the relevant period . . . ." (Doc. 15-2 at 24)  The ALJ questioned Packer regarding the impact of the medications, and partially credited her testimony that they affected her ability to perform light work.  Moreover, there exists substantial evidence in the record that certain, but not all, medications prescribed caused side effects.  (Doc. 15-2 at 18; Doc. 15-7 at 85)

The ALJ's decision that Packer is not disabled is also supported by the testimony of the vocational expert ("VE").  At the hearing, the ALJ presented the VE with the following hypothetical, which relates the ability to perform light work with certain specified restrictions:

> I'm going to ask that you consider that we have an individual with the same work history as Ms. Packer and that, assume further that the individual is limited in the following fashion.  Lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently, would need a sit/stand option but would not need to leave the work station, no more than occasional of the postural activities of climbing stairs, bending, stooping, kneeling, crouching, and crawling, and no work

---

[8] Consideration of medication side effects is required by the Commissioner's own regulations. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c).

16

> place hazards, no climbing ladders, scaffolds, or ropes, no work around unprotected heights or dangerous equipment. No . . . operation of foot controls, okay, and no work in temperature extremes. Need work that would avoid complex or detailed instructions.

(Doc. 15-2 at 61)  In response, the VE found that an individual with the same work history as Ms. Packer could perform work as an information clerk, storage facility rental clerk, parking lot attendant, and office helper, and such jobs existed in the region. (Doc. 15-2 at 61-62) "When the claimant cannot perform a full range of work at a given level of exertion . . . , the Commissioner's preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a VE." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

While the ALJ's explanation could have been more precise, and while the ALJ could have provided more targeted citations to the record, there exists "more than a mere scintilla" of evidence to support her findings. Moore, 405 F.3d at 1211. Whereas Packer has failed to persuade the Court that the ALJ did not point to relevant evidence regarding her capacity to work, this Court concludes that substantial evidence supports the ALJ's RFC determination.

### e) The Imposition of Additional Restrictions Was Harmless

The imposition of *additional* restrictions on Packer's ability to work reduces, rather than enhances, the possibility that Packer might be able to perform work in the national economy. Therefore, to the extent the ALJ may have erred by imposing additional limitations, such error was harmless and, based on the record, remand is unnecessary because it would not change the outcome of the case. See Cooper v.

Astrue, 373 F. App'x 961, 961 (11th Cir. 2010) (finding that claimant benefited from a consultative exam that, even if ordered erroneously, found additional limitations that were incorporated into the ALJ's decision and noting that "[e]rrors may be harmless if they do not prejudice the claimant"); see also Shinseki v. Sanders, 556 U.S. 396, 409 (2009) (party attacking an agency determination bears the burden of showing harmful error).

### C. The ALJ did not err at step two

The Magistrate Judge did not reach Packer's second assignment of error, namely that the ALJ erred in failing to find that Packer suffers from the additional severe impairments of degenerative joint disease of the right knee and varicose veins. (Doc. 16 at 15-19)  This issue is easily resolved because, even if the ALJ should have found at step two that those impairments were severe, such error would be harmless.  "[S]tep two only acts as a filter to prevent non-severe impairments from disability consideration," Ferguson v. Astrue, 2012 WL 4738857, at *9 (N.D. Ala. Sept. 27, 2012), and the ALJ's finding of other severe impairments allowed it to proceed to subsequent steps of the determination process.  As one court has explained:

> An ALJ's failure to find an additional impairment to be "severe" may be harmless, even if erroneous, where the ALJ proceeds beyond step two of the sequential analysis and it is apparent from the decision that the ALJ considered any limitations imposed by the impairment in assessing the claimant's residual functional capacity.

Fellows v. Astrue, 2011 WL 4005239, at *3 (M.D. Ala. Sept. 8, 2011).  See also Perry v. Astrue, 280 F. App'x 887, 894 (11th Cir. 2008) (explaining that the ALJ did not err by not specifically identifying the severe impairments at step two because he

18

enumerated and evaluated all the alleged impairments and symptoms in determining the claimant's RFC).  Here, the ALJ expressly considered all of Packer's impairments when attaching certain restrictions to her RFC.  See Doc. 15-2 at 19, 21, 24 (noting that the restrictions imposed were meant to accommodate "claimant's physical impairments including her musculoskeletal condition *and her non-severe impairments* " (emphasis added)).

## CONCLUSION

Accordingly, after due and proper consideration of all portions of this file deemed relevant to the issues raised, and a *de novo* determination of those portions of the Report and Recommendation to which objection is made, it is **ORDERED** that Defendant's Objection is **SUSTAINED** and the Court declines to adopt the Report and Recommendation of the Magistrate Judge (Doc. 21).  The decision of the Commissioner of Social Security is **AFFIRMED**.  Judgment will be entered accordingly.

**DONE** and **ORDERED** this 14th day of February, 2013.

/s/  Callie V. S. Granade  
UNITED STATES DISTRICT JUDGE